UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BONITA PERRY                                          CIVIL ACTION

VERSUS                                                   NO. 18-14180

DEPARTMENT OF VETERANS                    SECTION "R" (5)
AFFAIRS


## ORDER AND REASONS


Defendant, the Department of Veterans Affairs, moves for summary

judgment.  Because there is no genuine dispute as to any material fact, and

because the defendant is entitled to a judgment as a matter of law, the Court

grants defendant's motion.


I.     BACKGROUND

This case arises from an employment dispute.  Plaintiff, Bonita Perry,

began her career at the VA in 2006.[1]  In 2013, plaintiff transferred from the

VA's office at Fort Polk, Louisiana, to New Orleans.[2]  Plaintiff worked as a

vocational rehabilitation counselor ("VRC").[3]  VRCs are responsible for

---

[1]     R. Doc. 38-2 at 298 (Initial Decision at 2).
[2]     R. Doc. 38-2 at 249 (Transcript at 203).
[3]     R. Doc. 38-2 at 298 (Initial Decision at 2).

processing veterans' cases through a counseling process, with the goal of identifying and providing benefits administered by the VA.[4]

While working in New Orleans, plaintiff allegedly suffered a hand injury.[5]  She testified that she began complaining in 2014 about a "knot in [her] hand" that she believed was "related to [her] work area."[6]  She stated that she asked for an "ergonomic assessment" to identify accommodations for her hand.[7]  But, according to plaintiff, the VA required that she get a medical statement from a doctor before she could receive the assessment.[8]

Plaintiff testified that a doctor diagnosed a "clog[]" or "knot" in the tendons in her hand, and plaintiff underwent hand surgery in June 2014.[9]  She stated that, after surgery, she had to wear a cast for two months and attend physical therapy.[10]  Because of this injury, plaintiff went on medical leave between June 4, 2014 and September 2, 2014.[11]

Plaintiff requested several accommodations for her hand when she returned to work.[12]  She acknowledged that she received some

---

[4]     *Id.*
[5]     R. Doc. 38-2 at 249 (Transcript at 203).
[6]     *Id.*
[7]     *Id.*
[8]     *Id.*
[9]     *Id.* at 249-50 (Transcript at 203-04).
[10]    *Id.* at 250 (Transcript at 204).
[11]    *Id.*
[12]    *Id.*

accommodations, including "Dragon Naturally Speaking," a type of speech-recognition software, and a new chair.[13]  She also stated that she received a footrest and a hands-free telephone.[14]  But, plaintiff contends she did not receive other requested accommodations, such as a keyboard tray table.[15]  She also testified that she experienced various problems with the Dragon software, and she reported these problems each time they occurred.[16]  Plaintiff further testified that, beginning in 2016, she began experiencing mental health issues.[17]  To accommodate her mental health, plaintiff requested a transfer to the VA's Montgomery, Alabama office, so that she could be closer to her home in Mobile.[18]  Although it is not clear from the record exactly when, plaintiff ultimately filed a formal EEOC complaint for failure to reasonably accommodate her requests.[19]

As part of the EEOC proceeding, plaintiff deposed her first- and second-line supervisors, Carolyn Pannell and Debbie Biagioli, in July and August 2016.[20]  Plaintiff states that, a "couple of weeks" after these

---

[13]     *Id.* at 253-54 (Transcript at 207-08).
[14]     *Id.* at 254 (Transcript at 208); R. Doc. 38-3 at 7 (Plaintiff's Supplemental Response to Motion to Compel Order).
[15]     R. Doc. 38-2 at 254 (Transcript at 208).
[16]     *Id.* at 254-55, 262 (Transcript at 208-09, 216).
[17]     *Id.* at 255-56 (Transcript at 209-10).
[18]     *Id.* at 256 (Transcript at 210).
[19]     *Id.* at 256-57 (Transcript at 210-11).
[20]     *Id.* at 106, 164, 257 (Transcript at 60, 118, 211).

depositions, she received an email informing her that the VA would grant her request for a transfer to Montgomery, but that the VA would attach a performance improvement plan ("PIP") to it.[21]

Pannell testified that the VA imposed the PIP to address deficiencies in plaintiff's job performance.[22] She stated that plaintiff's performance began deteriorating in 2015, and that the problems worsened in 2016.[23] On July 29, 2016 Pannell, Perry, and her union representative had a meeting to discuss plaintiff's allegedly deficient performance.[24] On September 29, 2016 Pannell issued a "warning of unacceptable performance" memorandum to plaintiff.[25] That memorandum outlined the PIP and explained that plaintiff's performance was deficient under three "critical elements"—production, timeliness, and program data and integrity.[26] The memorandum asserted that Perry must improve her performance to specified measures in order to satisfy the VA's requirements.[27] The memorandum also set out training that the VA would provide.[28] The PIP was set to last for 90 days, during which

---

[21]  *Id.* at 257 (Transcript at 211).
[22]  *Id.* at 66 (Transcript at 20).
[23]  *Id.* at 63 (Transcript at 17)
[24]  R. Doc. 38-2 at 4 (Warning of Unacceptable Performance).
[25]  R. Doc. 38-2 at 4-17 (Warning of Unacceptable Performance).
[26]  *Id.* at 4.
[27]  *Id.* at 4-8.
[28]  R. Doc. 38-2 at 6.  A handwritten note in the margins of the memorandum states that plaintiff "does not want [training.]"  Pannell

plaintiff was expected to "perform the duties of [her] position at a fully successful level."[29]

Because plaintiff took leave during the PIP period, it was extended to a total of 111 days.[30]  It ended on January 24, 2017.[31]  Pannell concluded that plaintiff failed to improve her performance to a successful level.[32]  Accordingly, plaintiff's second line supervisor, Biagioli, issued a "proposed removal for unacceptable performance."[33]  Mark Balogna, director of the VA's regional office in New Orleans, ultimately sustained the proposed removal and issued the VA's final decision: removal for unacceptable performance.[34]

Plaintiff appealed the termination to the Merit Systems Protection Board ("MSPB").[35]  At the MSPB, plaintiff was represented by counsel.[36]  She brought four claims: (1) improper removal under 5 U.S.C. § 4303, *et seq.*, *i.e.*, Chapter 43 removal; (2) harmful procedural error; (3) failure to reasonably

---

testified that she wrote this note during the meeting because Perry refused the training.  R. Doc. 38-2 at 69 (Transcript at 23).  Plaintiff testified that she never refused the training.  R. Doc. 38-2 at 282 (Transcript at 236).

[29]     R. Doc. 38-2 at 8 (Warning of Unacceptable Performance).

[30]     R. Doc. 38-2 at 21 (PIP Summary)

[31]     *Id.*

[32]     *Id.*

[33]     R. Doc. 38-2 at 22-26 (Proposed Removal).

[34]     R. Doc. 38-2 at 27-30 (Removal).

[35]     R. Doc. 38-2 at 31 (Appeal Form)

[36]     *See* R. Doc. 38-2 at 297 (Initial Decision at 1).

accommodate in violation of the Rehabilitation Act ("RA"), 29 U.S.C. § 701, *et seq*.; and (4) discriminatory retaliation for protected EEO activity in violation of Title VII, 42 U.S.C. § 2000-e, *et seq*.  Administrative Judge ("AJ") Patrick J. Mehan affirmed Perry's removal on October 22, 2018 and dismissed her other claims.[37]  On December 24, 2018, plaintiff, proceeding *pro se*, appealed AJ Mehan's decision to this Court.[38]  Plaintiff's complaint consists of a single paragraph.  It states:

> Pursuant to Title 5 U.S.C. § 7703(b)(2), Bonita Perry petitions this Honorable Court for review of the decision of the Merit Systems Protection board decision, Case DA-0432-17-0313-I-2, which became final on November 26, 2018.  A copy of the decision is attached to this petition.[39]

The entirety of AJ Mehan's decision is attached as an exhibit to her complaint.[40]

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

---

[37]   *Id.* at 297-337 (Initial Decision).
[38]   R. Doc. 1.
[39]   *Id.*
[40]   R. Doc. 1-1 at 1-40.

*Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008).  All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."  *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.  "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins.  v. Lease*, 755 F. Supp. 948,

951 (D. Colo. 1991)).  "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 '*mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322 (emphasis added))).

## III.   DISCUSSION

This is a "mixed case," because plaintiff brought discrimination and non-discrimination claims at the MSPB. *Aldrup v. Caldera*, 274 F.3d 282, 285-86 (5th Cir. 2001). In a mixed case, the Court applies a bifurcated standard of review. For the two non-discrimination claims, which challenge her removal under Chapter 43 and allege harmful procedural error, the Court's review is "based on the administrative record" and the Court will uphold the MSPB's decision unless it is "arbitrary and capricious, unsupported by substantial evidence or otherwise not in accordance with law." *Id.* at 287 (citing 5 U.S.C. § 7703(c)). MSPB regulations define substantial evidence as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p). This standard is "lower" than the "preponderance of the evidence" standard. *Id.* As to the discrimination claims for failure to reasonably accommodate and for unlawful retaliation, the plaintiff is entitled to "trial *de novo*." 5 U.S.C. § 7703(c); *see also Aldrup*, 274 F.3d at 285.

### A.     Non-Discrimination Claims

Plaintiff asserted two non-discrimination claims at the MSPB: improper removal under Chapter 43 and harmful procedural error. The

Court notes that plaintiff did not raise any arguments in her response to defendant's motion for summary judgment on these claims.[41]  Nevertheless, the Court reviews these claims based on the administrative record.

       *1.    Termination*

The statutory basis for Perry's termination was Chapter 43.  Under this statute, an agency employee may be terminated for "unacceptable performance."  5 U.S.C. § 4303(a).  Unacceptable performance is not a synonym for "generally poor performance or inefficiency."  *Lovshin v. Dep't of Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985).  Rather, unacceptable performance is statutorily defined as performance that "fails to meet established requirements in one or more critical elements of the job." 5 U.S.C. § 4301(3).  A critical job element is defined by federal regulations as a "work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable."  5 C.F.R. § 430.203.

Under Chapter 43, after an agency has set up an "approved performance appraisal system," it must (1) communicate the performance standards and critical elements of an employee's position to the employee at the outset of the appraisal period; (2) warn the employee of inadequacies in

---

[41]     R. Doc. 47.

critical elements during the appraisal period; and (3) counsel the employee and afford an opportunity for improvement. *Lovshin*, 767 F.2d at 834. If it satisfies those requirements, an agency may terminate an employee for receiving a rating of unacceptable with respect to even a single critical job element. *Id.* The agency must prove unacceptable performance with "substantial evidence." 5 U.S.C. § 7701(c)(1)(A).

Plaintiff conceded that she was evaluated under an approved performance appraisal system,[42] and AJ Mehan did not err in finding that the VA satisfied the remaining requirements of unacceptable performance by substantial evidence. First, he found that the VA communicated the "observed deficiencies in her performance and how they related to the critical elements of her position" at the beginning of the PIP.[43] Indeed, this finding is supported by the "warning of unacceptable performance" that plaintiff received on September 29, 2016.[44] Second, based on the same document, he found that the VA warned Perry that she would be subject to an adverse action, including removal, if her performance did not improve after the PIP.[45]

---

[42]    R. Doc. 38-2 at 302 n.6.

[43]    *Id.* at 311 (Initial Decision at 15).

[44]    R. Doc. 38-2 at 4-9 (Warning of Unacceptable Performance); R. Doc. 38-2 at 10-17 (VRC Performance Standards).

[45]    R. Doc. 38-2 at 311 (Initial Decision at 15).

Third, AJ Mehan found that plaintiff had an opportunity to show improvement by working on her existing case load and new cases during the PIP, which lasted 111 days.[46]  AJ Mehan also addressed plaintiff's argument that the VA failed to provide her with an opportunity to improve because it never gave her training that was contemplated under the PIP.[47]  The VA did not contest that Perry never received this training, but it presented evidence that plaintiff rejected it.[48]  AJ Mehan relied on Pannell's testimony and her contemporaneous notes from the meeting in which Pannell discussed the PIP with Perry to make a credibility determination that Perry rejected the training.[49]  This Court "may not reweigh the evidence or substitute its own judgment for that of the [MSPB] even if this Court finds that the evidence preponderates against the Board's decision." *Bonet v. U.S. Postal Serv.*, 712 F.2d 213, 216 (5th Cir. 1983).  An AJ's credibility determinations are "virtually unreviewable." *Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (5th Cir. 2002).  Even if the Court found that the evidence weighed against AJ Mehan's conclusion—which it does not—it could not overturn the result on this ground.

---

[46]     *Id.* at 313 (Initial Decision at 17).
[47]     *Id.* at 314-17 (Initial Decision at 18-21).
[48]     *Id.* at 314, 316 (Initial Decision at 18, 20).
[49]     *Id.* at 318-19 (Initial Decision at 22-23).

Finally, AJ Mehan correctly concluded that the VA presented substantial evidence demonstrating that Perry's performance was deficient as to critical elements one and five—production and program and data integrity.[50]   Under critical element one, plaintiff had to achieve 15 "positive outcomes," maintain 85% "active cases" and have 14 "job ready decisions."[51] According to the evidence in the administrative record, including the PIP summary, plaintiff did not attain any positive outcomes, her percentage of active cases fell to 34.6%, and she produced no job ready decisions.[52]   AJ Mehan considered plaintiff's testimony that she "may have" had two positive outcomes, but noted that this still fell short of the 15 required.[53]   AJ Mehan did not err in concluding that the VA submitted substantial evidence establishing that Perry's performance failed to satisfy this critical element.

Critical element five required that plaintiff comply with various policies and procedures in counseling actions, case management actions, and documentation.[54]   To achieve a successful level, plaintiff could have "[n]o more than three instances of minor, unintentional failures to meet policy or

---

[50]     R. Doc. 38-2 at 308, 310-11 (Initial Decision at 12, 14-15).
[51]     R. Doc. 38-2 at 4 (Warning of Unacceptable Performance).
[52]     R. Doc. 38-2 at 18 (PIP Summary).
[53]     R. Doc. 38-2 at 308 (Initial Decision at 12); R. Doc. 38-2 at 285 (Transcript at 239).
[54]     R. Doc. 38-2 at 5 (Warning of Unacceptable Performance).

directive requirements," or "[n]o more than one instance of intentional failure to comply with a policy which results in significant negative impact to a Veteran or Servicemember."[55]   The PIP summary shows that the VA documented five unintentional failures to comply with policies or directives.[56]  AJ Mehan noted that plaintiff did not contest these deficiencies and correctly concluded that the VA established plaintiff's failure to satisfy critical element five with substantial evidence.[57]

In sum, AJ Mehan relied on documentary evidence, performance data, and testimony from numerous witnesses to conclude that the VA appropriately terminated plaintiff due to unacceptable performance.  The Court concludes that the MSPB's decision on the wrongful termination was not arbitrary and capricious, unsupported by substantial evidence, or otherwise contrary to law.  Accordingly, the Court must uphold the MSPB's determination.  Defendant is entitled to summary judgment on the wrongful termination claim.

### 2.    *Harmful Procedural Error*

The MSPB may not uphold the termination if the VA committed harmful error in reaching the decision to remove plaintiff. *See* 5 C.F.R.

---

[55]    *Id.*
[56]    R. Doc. 38-2 at 20 (PIP Summary).
[57]    R. Doc. 38-2 at 311 (Initial Decision at 15).

1201.56; *see also Cornelius v. Nutt*, 472 U.S. 648, 658 (1985).  Harmful error occurs where application of the agency's procedures "is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r).  Plaintiff bears the burden of showing harmful error, "*i.e.*, that it caused substantial harm or prejudice to . . . her rights." *Id.*  AJ Mehan found that plaintiff failed to carry her burden.[58]  Upon reviewing the record, the Court agrees with the AJ's conclusion.  Plaintiff did not even submit the policy that the VA allegedly violated, let alone establish that the VA would have reached a different conclusion if it had followed its procedures.  Consequently, defendant is entitled to summary judgment on this claim.

### B.   Discrimination Claims

On her discrimination claims, plaintiff is entitled to "trial *de novo*." 5 U.S.C. § 7703(c).  The Court is not limited to the administrative record, and the parties may submit "additional evidence."  *Wiggins v. U.S. Postal Service*, 653 F.2d 219, 221 (5th Cir. 1981).  Plaintiff did not come forward with any new evidence, apparently relying solely on the administrative record.  On its part, defendant provided several affidavits and plaintiff's responses to its interrogatories.

---

[58]    *Id.* at 327-28 (Initial Decision at 31-32).

### 1.   *Reasonable Accommodation*

In her first discrimination claim, plaintiff alleges that the VA failed to provide her with reasonable accommodations.  The Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA") prohibit employment discrimination against qualified individuals with disabilities. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010).  The two acts govern different entities—the RA governs federal employment and the ADA governs private employment—but they are "judged under the same legal standards." *Id.* (citing 42 U.S.C. § 12131(1); 29 U.S.C. § 794(a)).  The RA expressly states that the standards for employment discrimination complaints are those under the ADA.  29 U.S.C. § 791(f).  The Fifth Circuit has found that jurisprudence interpreting a section of one act is applicable to the other. *Kemp*, 610 F.3d at 234 (quoting *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002)).

A claim for failure to provide reasonable accommodation includes three elements: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  To establish a disability, plaintiff must show that she (1) has "a physical or mental impairment that substantially limits one or more major life activities;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment."  *Id.* at § 12102(1).  In the ADAAA, Congress amended the ADA to "reject" the U.S. Supreme Court's restrictive interpretation of a substantial limitation and to state that "to be substantially limited in performing a major life activity under the ADA 'an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives.'" PL 110–325 at § 2(b)(4)-(5) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002)).  The EEOC's implementing regulations provide a non-exhaustive list of major life activities, which include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

Plaintiff's argument is focused solely on her inability to type.  But no court has ever said that typing, on its own, is a major life activity.  Indeed, at least two courts—including the Ninth Circuit and this Court—have expressly

found otherwise.  *See Thornton v. McClatchy Newspapers, Inc.*, 292 F.3d 1045, 1046 (9th Cir. 2002) (stating that the court is "unpersuaded that [plaintff's] inability to continuously keyboard or write is within the confines of . . . a 'substantial limitation'"); *Picard v. St. Tammany Par. Hosp.*, 611 F. Supp. 2d 608, 615 (E.D. La. 2009) ("[A]n inability to type, standing alone, is not sufficient to show that a plaintiff is disabled.").  Additionally, even if plaintiff had argued that she was limited from working—a major life activity listed under the EEOC's regulations—she fails to create an issue of fact on this question.  To establish that she is limited from working, plaintiff must show "that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities."  *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011) (holding that a plaintiff must make this showing "even after the enactment of the ADAAA and the modified EEOC regulations").  Plaintiff did not submit any evidence on this point. Consequently, she has failed to create an issue of material fact as to whether she is "substantially limited" from a "major life activity."

For the same reasons, even if there is a "record of" her physical impairment, there is no issue of material fact as to whether the impairment was substantially limiting.  Finally, plaintiffs who are only "regarded as"

18

disabled are not entitled to accommodations. 42 U.S.C. § 12201(h) (stating that an employer "need not provide a reasonable accommodation . . . to an individual who meets the definition of disability" solely under the regarded as disabled definition). Accordingly, plaintiff has failed to create an issue of fact as to whether her alleged physical impairment is a disability that could support her reasonable accommodation claim.

As to her alleged mental impairment, plaintiff did not argue, much less introduce evidence to establish an issue of material fact, that it limited a major life activity. *See id.* at § 12102(1). The Court finds that plaintiff has not created an issue of material fact as to whether she is disabled. Accordingly, the Court must grant defendant's motion for summary judgment on this claim.

### 2. *Retaliation*

Title VII generally prohibits discrimination against an employee on the basis that she has engaged in protected activity. *See* 42 U.S.C. § 2000e-3(a). Although the sections of Title VII that apply to federal employees do not expressly prohibit retaliation, the Fifth Circuit has held that "§ 2000e-16 bars retaliation" against federal employees as well. *Brazoria Cnty. v. E.E.O.C.*, 391 F.3d 685, 690 (5th Cir. 2004). Here, plaintiff argues that the VA retaliated against her because she brought an EEOC complaint for failure to

reasonably accommodate.[59]   To establish a *prima facie* case for unlawful retaliation, plaintiff must show (1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.  *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996) (quoting *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir.1983)).

The *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), framework applies to Title VII unlawful retaliation cases.  As such, if plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Long*, 88 F.3d at 305.  If the defendant produces evidence that would "permit the conclusion that the adverse employment action was nondiscriminatory," the burden shifts to the plaintiff to show that "but for" the protected activity, the adverse employment action would not have occurred.  *Id.* at 305 & n.4.  To avoid summary judgment on but-for causation, plaintiff must demonstrate "a conflict in substantial evidence" on the issue.  *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012) ("Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might

---

[59]   *See* R. Doc. 38-2 at 325-27 (Transcript at 29-31).

reach different conclusions." (quoting *Long*, 88 F.3d at 308)).  The Fifth Circuit has also described this ultimate issue as a requirement that plaintiff show that the defendant's stated reason is a "pretext."  *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 306 (5th Cir. 2020).

Even assuming that plaintiff has established a *prima facie* case for retaliation, her claim still fails.  Defendant's stated reason for terminating her—unacceptable performance—is legitimate and nondiscriminatory.  *See Standley v. Rogers*, 202 F. Supp. 3d 655, 671 (W.D. Tex. 2016), *aff'd*, 680 F. App'x 326 (5th Cir. 2017) (finding that removal for unacceptable performance is a legitimate, nondiscriminatory reason).   Defendant produced two documents to establish this point: the proposed and final removals.  They expressly state that the reason for Perry's termination is "unacceptable performance."[60]  The Court finds that defendant carried its burden of showing a legitimate, nondiscriminatory reason for terminating plaintiff.

Therefore, plaintiff bears the burden of showing that her EEO complaint was the "but for" cause of the removal.  *Long*, 88 F.3d at 308.  Plaintiff makes two arguments in her attempt to establish but-for causation.

---

[60]    R. Doc. 38-2 at 22-26 (Proposed Removal); R. Doc. 38-2 at 27-30 (Removal).

First, she contends that but for the defendant's failure to reasonably accommodate her, her performance would have never faltered.[61] Second, she argues that the temporal proximity between her EEO complaint and the beginning of her PIP lead to an "inference" of causation.[62]

The first argument is inapposite. Even if she could prove that her performance would have risen to an acceptable level given a different accommodation, this would not satisfy her burden of showing pretext. She must show that her protected activity—filing an EEO complaint—led to her termination. This argument essentially restates her reasonable accommodation claim, which the Court rejected above.

As to her second argument, that the Court should infer causation because of the temporal proximity between the EEO complaint and the PIP, this argument fails. The Fifth Circuit has specifically held that "but for causation . . . cannot be established by temporal proximity alone." *Hernandez*, 670 F.3d at 660. Plaintiff, relying on *Lyons*, 964 F.3d at 306, argues that temporal proximity is enough. But she misconstrues the *Lyons* court's decision. There, the Fifth Circuit held that evidence showing temporal proximity between a plaintiff's protected action and an adverse

---

[61]   R. Doc. 47 at 8.
[62]   *Id.* at 8-9.

employment activity may satisfy the causation element for a *prima facie* retaliation claim. *Id.* But the court also stated that temporal proximity "is insufficient to demonstrate pretext." *Id.* at 306-07. Because Perry has not submitted any other evidence on this issue, she has not created an issue of material fact on the question of pretext.

For the foregoing reasons, plaintiff's retaliation claim fails. The Court must grant defendant's motion for summary judgment on this claim.

## IV.   CONCLUSION

The Court GRANTS defendant's motion for summary judgment. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this __19th__ day of November, 2020.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

23